# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MARYLAND

✓ ____ FILED  ___ ENTERED
____ LOGGED  _____ RECEIVED

**5:07 pm, Mar 31 2021**

AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

| | | |
|---|---|---|
| **IN THE MATTER OF THE** | * | |
| **SEARCH OF:** | * | |
| | * | |
| **THE FACEBOOK ACCOUNT ASSOCIATED** | * | **CRIM. NO.** 21-mj-00783-JMC |
| **WITH USER ID: 100022371494571, AND** | * | |
| **VANITY NAME: SEAN.RICHARDSON.5201** | * | |
| | * | |
| **THE INSTAGRAM ACCOUNT ASSOCIATED** | * | **CRIM. NO.** 21-mj-00784-JMC |
| **WITH EMAIL ADDRESS:** | * | |
| **SEANCRICHARDSON@OUTLOOK.COM** | * | |
| **AND USERNAME SEAN.RICHARDSON.5201** | * | |
| | * | |
| **THE SNAPCHAT ACCOUNT ASSOCIATED** | * | **CRIM. NO.** 21-mj-00785-JMC |
| **WITH EMAIL ADDRESS:** | * | |
| **SEANCRICHARDSON@OUTLOOK.COM** | * | |
| **AND USERNAME: SEANRICH79** | * | |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Kelly M. DiAntonio, a Special Agent (SA) with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, depose and state as follows:

1.      I have been an Agent since April 2012.  As part of the daily duties as an HSI Special Agent, your Affiant investigates criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of Title 18, U.S.C. §§ 2251 and 2252A.  I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations.   Specifically, I have received formal training through HSI and other agencies in the area of child pornography, pedophile behavior, collectors of other obscene material, and internet crime.  I have participated in the execution of numerous search warrants, of which the

1

majority has involved child exploitation and/or child pornography offenses.  Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, magnetic storage media for computers, other electronic media, and other items evidencing violations of federal laws, including various sections of Title 18, United States Code § 2252A involving child exploitation offenses.  I have also participated in the execution of search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to child exploitation and/or child pornography.  In the course of my employment with HSI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

2.      I have received formal training from HSI and other agencies in the area of child pornography, pedophile behavior, collectors of other obscene material and Internet crime.  This includes, but is not limited to, use of Internet facilities to produce child pornography in violation of 18 U.S.C. § 2251(a), distribute and receive child pornography in violation of 18 U.S.C. § 2252(a)(2), and possess child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

3.      As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to affect arrests and execute warrants issued under the authority of the United States.

4.      This affidavit is being is being submitted in support of an application for a warrant to search the following **"TARGET ACCOUNTS"**:

> a. The Facebook Account associated with User ID: 100022371494571, and Vanity Name:  sean.richardson.5201 (**TARGET ACCOUNT 1)**, more specifically described in Attachment A1, which is incorporated herein by

reference,

    b. The Instagram Account associated with username sean.richardson.5201 and e-mail address seancrichardson@outlook.com **(TARGET ACCOUNT 2),** more specifically described in Attachment A2, which is incorporated herein by reference; and

    c. The Snapchat, Inc. account associated with the e-mail address seancrichardson@outlook.com and the username seanrich79 **(TARGET ACCOUNT 3)**, more specifically described in Attachment A3, which is incorporated herein by reference.

5.    The statements in this affidavit are based in part on information provided by law enforcement officers of the Cecil County Sheriff's Office, the Elkton Police Department, HSI Dallas, Texas, and HSI Roswell, New Mexico, as well as documents and reports prepared by law enforcement officers of the Cecil County Sheriff's Office, and on my experience and background as a Special Agent of HSI.  Since this affidavit is being submitted for the limited purpose of securing search warrants, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of 18 U.S.C. § 2251(a) (Production of Child Pornography); 18 U.S.C. §§ 2252(a)(2) & 2252A(a)(2) (Receipt or Distribution of Child Pornography); 18 U.S.C. §§ 2252(a)(4)(B) & 2252A(a)(5)(B) (Possession of Child Pornography); 18 U.S.C. § 2252A(a)(6) (Grooming); 18 U.S.C. § 2422(b) (Use of Interstate Commerce Facilities to Entice a Minor to Engage in Sexual Activity) are located within the Accounts described more fully below and in the Attachment.

## SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POSSESS AND COLLECT CHILD PORNOGRAPHY AND HOW USE OF COMPUTERS AND

## THE INTERNET RELATES TO THE POSSESSION, RECEIPT AND DISTRIBUTION OF CHILD PORNOGRAPHY

6.      Based upon your Affiant's experience in child exploitation investigations and upon information provided to your Affiant by other law enforcement officers, the following can be true of child molesters/child pornographers:

a.      Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.      Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.      Individuals who have a sexual interest in children or images of children frequently maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.      Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.  These collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly.

e.      Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.  This data is typically in digital format, and often maintained on computers and in online storage, email accounts or other online communication accounts.

4

f.      Individuals who would have knowledge on how to distribute and receive digital images of child pornography through the use of Peer to Peer networks and other online methods would have gained knowledge of its location through online communication with others of similar interest.  Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms, have forums dedicated to the trafficking of child pornography images.  Individuals who utilize these types of forums are considered more advanced users and therefore more experienced in acquiring a collection of child pornography images.

g.      Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period.  This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.

7.      Based on my investigative experience related to computer and internet related child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned the following:

a.      Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized.  It has also revolutionized the way in which child pornography collectors interact with each other.  Child pornography formerly was produced using cameras and film (either still photography or movies).  The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images.  To distribute these on any scale also required significant resources.  The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public.  The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls.  Any reimbursement would follow these same paths.

b.      The development of computers and the internet have added to the methods used by child pornography collectors to interact with and sexually exploit children.  Computers and the internet serve four functions in connection with child pornography.  These are production, communication, distribution, and storage.

c.      Child pornographers can now transfer photographs from a camera onto a computer-readable format.  With the advent of digital cameras, the images can now be transferred directly onto a computer.  A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.

d.      Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem.    Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), easy access to the Internet, and online file sharing and storage, the computer is a preferred method of distribution and receipt of child pornographic materials.

e.      The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.   Collectors and distributors of child pornography use online resources to retrieve and store child pornography, including services offered by Internet Portals such as AOL Inc., Yahoo!, Google, Inc., Facebook, Dropbox, and Instagram, among others.   The online services allow a user to set up an account with a remote computing service that provides e-mail services, file exchange services, messaging services, as well as electronic storage of computer files in any variety of formats.   A user can set up an online storage account from any computer with access to the Internet.   Email accounts, online storage accounts, and other online communication accounts allow users to save significant amounts of data, including e-mail, images, videos, and other files.   The data is maintained on the servers of the providers and is occasionally retained by the providers after the user deletes the data from their account.

f.      In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

8.      Based on traits shared by collectors, the use of e-mail, online storage accounts, and other online communication accounts, and the increased storage capacity of computers and server space over time, there exists a fair probability that evidence regarding the production, distribution, receipt and possession of child pornography will be found in the **TARGET ACCOUNTS** notwithstanding the passage of time.

<u>**FACEBOOK INC.**</u>

9.      Facebook is a free social networking website that provides a host of services to its users.   Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.   Facebook users can post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.   A particular user's profile page includes a "Wall," which is a space where the user and his or her "Friends" can

post messages, attachments, and links.

10.     Facebook as a Photos application, where users can upload images and videos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video.  For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

11.     Facebook users can exchange private messages with one another.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

12.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.  The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook also has a Marketplace feature, which allows users to post free classified ads, including items for sale, housing, jobs, and the like.

## INSTAGRAM

13.     Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com.  Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information.  Users can access Instagram through the Instagram website or by using a special

electronic application ("app") created by the company that allows users to access the service through a mobile device

14.     Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter[1].  When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information.  A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos.  In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram.  Users can also "like" photos.

15.     Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password.  This information is collected and maintained by Instagram.

16.     Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile.  This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram.  Once an account is created, users may also adjust various privacy and account settings for the account on Instagram.  Instagram collects and maintains this information.

17.     Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public.  Friends on Instagram may

---

[1] In posting and sharing photos, Instagram users are affecting interstate or foreign commerce.

come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

18.  Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

19.  Instagram allows users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram. Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

20.  Users on Instagram may also search Instagram for other users or particular types of photos or other content.

21.  For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

22.  Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to

ensure advertisements are relevant to a user's interests.

23.     Instagram also collects information on the specific devices used to access Instagram.  Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

24.     Instagram also collects metadata associated with user content.  For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

25.     Instagram also may communicate with the user, by email or otherwise.  Instagram collects and maintains copies of communications between Instagram and the user.

26.     Based on the information above, the computers of Instagram are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## SNAPCHAT, INC.

27.     Snapchat is owned by Snap, Inc.  Snapchat is a messaging application for mobile devices.  The application provides a way to share moments with photos, videos and text.  Some of the features of Snapchat are Snaps, Stories, Memories and Chat.  Snaps are when a user takes a photo or video using their mobile device in real-time and selects which of their friends to send the message to.  Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after the message

21-mj-00783-JMC - 21-mj-00783-JMC

is opened in the case of the recipient.)  Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

28.     A user can add photo or video Snaps to their "Story."  Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchat users or just the user's friends for up to 24 hours.  Stories can also be saved in Memories.

29.     Memories is Snapchat's cloud-storage service.  Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories.  A user can also edit and send Snaps and create Stories from these Memories.  Snaps, Stories, and other photos and videos saved in Memories are backed up by us and may remain in Memories until deleted by the user.

30.     A user can also type messages, send photos, videos, audio notes, and video notes to friends within Snapchat application using the Chat feature.  A user sends a Chat message to a friend, and once it is viewed by both parties and both parties swipe away from the Chat screen, the message will be cleared.  Within the Snapchat application itself, a user can opt to save part of the Chat by tapping on the message that the user wants to keep.  The user can clear the message by tapping it again.

## WHATSAPP LLC.

31.     WhatsApp is a free mobile and messaging app owned by Facebook. Instead of using a cellular network, WhatsApp needs only a Wi-Fi connection to send encrypted videos, voice calls, and text messages around the world. The app launched in 2009 and became popular when Facebook purchased it in 2014.

32.     WhatsApp allows for group chats where messages, photos, and videos can be shared with up to 256 people at once.  Group chats can also be named, muted, and have custom

notifications. Users can send PDFs, documents up to 100 MB, spreadsheets, slideshows, voice messages and more. WhatsApp has a built-in camera and boasts that photos and videos can be sent quickly, even on a slow connection.

33.     Users can also make free calls, including video calls, even to individuals in other countries, using a cell phone's Internet connection instead of the cell phone's voice minutes. WhatsApp employs end-to-end encryption, where messages and calls are secured so only the user and the person they're communicating with can read or listen to them.

## INVESTIGATION OF SEAN RICHARDSON

34.     On October 23, 2020 the Elkton Police Department (EPD) received a message on their agency Facebook page stating "Hello im on some adult pages and some alarming conversation came up from a member. I took screenshots that were posted and have the link to the profile. I hope you can look in to this as its big red flags for pedophilia." A link to the Facebook page, https://www.facebook.com/sean.richardson.5201 was also provided as well as screenshots from a conversation between "Sean Richardson" and another Facebook User (FBU) with the following text:

| Content: | Sender: |
|---|---|
| "We do everything to be honest" | FBU |
| "Nothing to taboo or off limits?" | Sean RICHARDSON |
| "Not at all" | FBU |
| "Kids? Animals?" | Sean RICHARDSON |
| "Pet play and ddlg sure but not actual kids or animals haha" | FBU |
| "I'd love to see her on her back getting fucked by you while a kid watches or while she holds them" | Sean RICHARDSON |
| "That's a tad too far, no kids" | FBU |
| "Ok thanks anyway" | Sean RICHARDSON |
| "So no kids at all?" | Sean RICHARDSON |
| "No" | FBU |
| "Ok" | Sean RICHARDSON |
| "Thank you" | Sean RICHARDSON |

35.     The second screen shot contained the following text:

| Content: | Sender: |
|---|---|
| "did you wanna buy any content" | FBU |
| "Do you have any masturbating vids with the kids near you playing?" | Sean RICHARDSON |
| "are you into kids or something?" | FBU |
| "No I'm into you masturbating by the kid" | Sean RICHARDSON |
| "Can you make that for me?" | Sean RICHARDSON |
| "anything to do with a child sexually is wrong & disgusting. that's crazy that you'd even suggest that. sounds like pedo shit to me." | FBU |
| "Ok thank you love" | Sean RICHARDSON |
| "i'm gonna go ahead and post this in some groups and let others know, it really worries me to know you ask women for videos like that. i hope to god you don't have any children of your own that you masturbate near, that's horrible. | FBU |

36.     On October 29, 2020, Detective Corporal Leffew of the Elkton Police Department obtained a search and seizure warrant for records relating to the aforementioned Facebook account (**TARGET ACCOUNT 1**) for a time period of approximately two days. On December 1, 2020, Detective Corporal Leffew received account records from Facebook Inc. Facebook provided content, subscriber information including a date of birth, verified phone numbers and IP address information.

37.     Several conversations occurred in the **TARGET ACCOUNT 1** in the approximately two-day time period requested in the warrant, where RICHARDSON repeatedly asks females to produce sexually explicit videos involving minors.  In a conversation that occurred on October 21, 2020, RICHARDSON says "I'd love to watch you masturbate while a kid sits next to you." In another conversation occurring on October 22, 2021, RICHARDSON asked a female

Facebook user "You do mom daughter vids?" This same question is posed to at least three other females.

38.    On October 22, 2020, a conversation occurred between RICHARDSON and an identified Facebook user, henceforth referred to as Identified Adult Female 1 (IAF1). Early in the conversation, RICHARDSON asks IAF1 "You do blood, animal, pedo, BDMS, ffm, fmm?" The following excerpts are from their conversation:

| Sent: | Author: | Body: | Recipient: |
|---|---|---|---|
| 2020-10-22 01:37:27 UTC | Sean Richardson | You ever do things with your son? Since you had things done to you? | IAF1 |
| 2020-10-22 01:38:05 UTC | Sean Richardson | How old is he? | IAF1 |
| 2020-10-22 01:39:35 UTC | IAF1 | No, I Probably Would When Hes Older And Legal lol I Would Hate To Get Caught Upppp haha | Sean Richardson |
| 2020-10-22 01:39:39 UTC | IAF1 | He's 4 (emoji) | Sean Richardson |
| 2020-10-22 01:40:54 UTC | Sean Richardson | That's a in age! Would you ever do a vid masturbating with him sitting with you? | IAF1 |
| 2020-10-22 01:41:13 UTC | IAF1 | Like Him In The Video? | Sean Richardson |
| 2020-10-22 01:41:17 UTC | IAF1 | Probably Not (emoji) | Sean Richardson |
| 2020-10-22 01:41:26 UTC | Sean Richardson | Just sitting with you is all | IAF1 |
| 2020-10-22 01:41:50 UTC | IAF1 | I Mean I Wouldnt Put Him In The Video Thoughh | Sean Richardson |
| 2020-10-22 01:42:40 UTC | Sean Richardson | Oh ok that would just be a fun video. Wish you had someone you could do that with | IAF1 |
| 2020-10-22 01:43:20 UTC | IAF1 | Awhh Meee Tooo (emoji) lol | Sean Richardson |
| 2020-10-22 01:44:38 UTC | Sean Richardson | I would pay good money for something with you and a girl. Damn baby that would be sexy | IAF1 |
| 2020-10-22 01:45:07 UTC | IAF1 | What's Good Money To You? lol And Why Would You Want Toooo? Are You A Cop? lol | Sean Richardson |

| | | | |
|---|---|---|---|
| 2020-10-22 01:45:46 UTC | Sean Richardson | No I'm not a cop just a pervert. Money is up to you and what you can out in a video | IAF1 |
| 2020-10-22 01:45:58 UTC | Sean Richardson | Put | IAF1 |
| 2020-10-22 0 1:46:25 UTC | IAF1 | Not Sure, What Would You Want? | Sean Richardson |
| 2020-10-22 01:46:59 UTC | Sean Richardson | You and young girl. Both nude eating her pussy | IAF1 |
| 2020-10-22 01:47:38 UTC | Sean Richardson | Or like I said. Your son sitting next to you while you are nude masturbating | IAF1 |
| 2020-10-22 01:48:13 UTC | Sean Richardson | I don't want him naked. Just sitting next to you | IAF1 |
| 2020-10-22 01:48:23 UTC | IAF1 | Okaay (emoji) | Sean Richardson |

39.     RICHARDSON and IAF1 go back and forth about money as IAF wants a higher amount because what RICHARDSON is asking is "extreme." At one point, RICHARDSON says "That's not extreme. If you were sucking or fucking him then yes. I'd go $100 for just masturbating in front of him." Per RICHARDSON, the final deal is "Okay let do a 1 min video of you masturbating nude next to him. I need a good shot of both of you. I'll agree to that. We can do more money in later vids but I want verification with the firsr." RICHARDSON then requests IAF1's Cash App information, which is provided. As the conversation continues, RICHARDSON continues to ask about IAF1's child and at one point questions, "How much for that? If he rubs your pussy?" IAF1 tells RICHARDSON it would be too much and RICHARDSON asks if they can go off Facebook and begin texting.  IAF1 provides her phone number and the conversation ends shortly thereafter.

40.     Detective Corporal Leffew conducted a search for RICHARDSON using the date of birth provided by Facebook and located Sean RICHARDSON with an Elkton address. Realizing RICHARDSON's address was beyond EPD's jurisdictional limit, the case was transferred to the Cecil County Sherriff's Office.

41.    On December 2, 2020, Cecil County Sheriff's Office (CCSO) Detective Chase Armington was contacted by Detective Corporal Leffew (EPD) regarding the RICHARSON investigation. Detective Armington reviewed the evidence and positively identified Sean Christopher RICHARSDON of 14 White Pine Court, Elkton, Maryland. Based on the severity of the conversations, the CCSO obtained a search and seizure warrant for RICHARDSON's residence and executed it on December 2, 2020. Multiple electronic devices were seized, including four laptops and three cell phones.

42.    On January 11, 2021, an administrative summons was sent to Square Inc. for information pertaining to Sean RICHARDSON's Cash App account.  On January 12, 2021, Square Inc. complied with the summons and provided the following information:

| | |
|---|---|
| Identity Verification Name: | Sean Richardson |
| Date of Birth: | XX/XX/1979 |
| Last 4 of Social: | 3903 |
| Phone Number: | 4435660242 |
| Cashtag: | seanrichardson79 |
| | |
| Address: | 14 White Pine Ct, |
| | Elkton, MD 21921 |

43.    Square Inc. also provided transactional information pertaining to RICHARDSON's account. A review of the transactions show RICHARDSON paying multiple individuals for possible pictures and videos. In the transaction log, wording under the "subject" heading included "content," "vids," "pics," or "vip page." Also, in the transactional log between RICHARDSON and a second identified female (IAF2), there was a dialog within the "subject" category. The final two "subjects" combined state "im giving ur name and pictures taken ofour convo to police. ur a pedophile."

44.    The Square Inc. transactional log also included several transactions to IAF1, who's Facebook conversations were previously discussed in paragraph 18 of this affidavit.

16

45.     On January 15, 2021 SA DiAntonio and CCSO Detective Armington placed a recorded call to IAF1. IAF1 agreed to answer questions as part of the recorded conversation. IAF1 stated that she had reached out to RICHARDSON after seeing a post on Facebook about him asking another individual to create videos with children for compensation. IAF1 was hoping to make fast money but never intended on producing images with her child. IAF1 stated that RICHARDSON paid her and she sent RICHARDSON pornographic videos, none of which included a minor. IAF1 confirmed that the video content was sent over text messages, and RICHARDSON continued to request additional content with minors. IAF1 retained the messages on her device. IAF1 confirmed that her minor child had been removed from the household and she has had no further contact with RICHARDSON.

46.     Based on the conversation with IAF1, CCSO Armington and HSI SA DiAntonio agreed that the cellular phones seized from RICHARDSON's residence needed an additional forensic evaluation to determine if RICHARDSON was requesting and receiving images of child pornography. On February 1, 2021, U.S. Magistrate Judge Thomas M. DiGirolamo signed a search warrant for the cell phones seized from RICHARDSON's residence, authorizing the seizure of any evidence of federal child pornography offenses found therein.

47.     Within RICHARDSON's cell phone, an Instagram account was located. The content of Instagram account not transferred by the forensic download. The Instagram user profile on the phone was an image with a red trident in a red circle. Open source research uncovered an open Instagram profile for sean.richardson.5201 **(TARGET ACCOUNT 2)** with the name of "Sean Richardson." The profile account picture was red trident encircled by a red circle and was still active at the time of this affidavit. As the account is not private, content was available including images of Sean Richardson and his minor children.

48.     On February 12, 2021, an administrative summons was sent to Instagram (Facebook, Inc). for information pertaining to the account sean.richardson.5201 **(TARGET ACCOUNT 2).** Facebook, Inc. responded with the following information:

| | |
|---|---|
| Account Type: | Instagram |
| Name: | Sean Richardson |
| Email Address: | seancrichardson@outlook.com |
| Created: | 2018-09-12 23:21:00 UTC |
| Phone Number: | 14435660242 (Verified) |
| Account Active: | True |

49.     On February 4, 2021 SA DiAntonio received a call from an HSI Computer Forensic Analyst (CFA) assigned to review RICHARDSON's devices.  The CFA stated he discovered videos in the WhatsApp application from a female (who was subsequently identified), henceforth referred to as IAF3. One video was a clip of IAF3 breastfeeding an infant in a diaper.  Three additional videos, all between one minute and one minute and thirty seconds, consisted of IAF3 masturbating with a pink sex toy while breastfeeding the infant.  The infant attempted to grab the sex toy multiple times during the videos, which appear to have been recorded by a third party.

50.     On February 4, 2021, SA DiAntonio discovered three Cash App payments made to an individual with the same name as IAF3 on August 30, 2020 and September 1, 2020.  An exigent summons was sent to TDS Telecom Communications for subscriber information for IAF3's Cash App account.  TDS Telecom responded immediately with a location of IAF3 in New Mexico.  HSI Roswell, New Mexico executed a state search warrant at the believed residence of IAF3 the same night.  Neighbors confirmed that IAF3 and her family had moved to Texas recently.

51.     On February 4, 2021 SA DiAntonio submitted an exigent request to Facebook for IAF3's Facebook account.  Facebook responded with updated IP addresses and a last known location for the device. Based on the information from Facebook, SA DiAntonio contacted HSI Dallas, who interviewed IAF3 on February 5, 2021. IAF3 stated she didn't remember

RICHARDSON specifically but did receive money from an individual requesting videos of her breastfeeding her child. IAF3 couldn't recall the entire conversation but believed that RICHARDSON also requested to watch her male children (ages 3 and 7) in the shower, although she denied taking those videos.

52.     The agreement between Sean RICHARDSON and IAF3 was not recorded in the WhatsApp conversation. Based on the previous search warrant to Facebook, which only contained approximately two days of content, there is a strong probability that RICHARDSON was requesting pornographic material involving the use of minors from more individuals that those identified thus far in this investigation.

53.     IAF2 (previously discussed in paragraph 43 of this affidavit) was identified based on her Cash App. transactions with RICHARDSON. In the transactional log provided by Cash App., the dialog within the "subject" category showed IAF2 calling RICAHRDSON a pedophile was written by IAF2. IAF2 told RICHARDSON she was reporting him to police. On March 23. 2021, investigators placed a recorded call to IAF2 who admitted that she had received $75 from RICHARDSON and believed she had met him over Snapchat. In the Cash App. transactional log, IAF2 had written "noooo.. U blocked me on snap after i sent the vid."

54.     When investigators asked about Snapchat, IAF2 stated she had blocked RICHARDSON on Snapchat and was able to identify his account as seanrich79 **(TARGET ACCOUNT 3).** There was no content available in the conversation except for a phone number that RICHARDSON provided on August 27, 2020, the same day as the verified Cash App. transactions. IAF2 believed she remembered parts of the conversation and believed RICHARDSON had asked her if she had siblings or if she babysat children. IAF2 had mentioned a female being 15-16 and RICHARDSON told her that was too old.

55.     On March 2, 2021 an administrative summons was sent to Snapchat, Inc. for information pertaining to the account seanrich79 **(TARGET ACCOUNT 3).** Snapchat Inc, responded with the following information:

| | |
|---|---|
| ID: | seanrich79 |
| Email Address: | seancrichardson@outlook.com |
| Created: | Thu Jan 17 23:33:52 UTC 2019 |
| Phone Number: | 14435660242 |
| Display Name: | Sean Richardson |
| Status: | Active |

## CONCLUSION

56.     Based on the activity of RICHARDSON detailed above, as well as my training and experience, I believe that the RICHARDSON displays characteristics common to individuals who have a sexual interest in children, and who access with the intent to view and/or, possess, collect, receive, distribute, and produce child pornography as discussed above.  Further, I believe that the information above establishes that RICHARDSON's Facebook account contains conversations indicative of RICHARDSON'S attempt to entice individuals to produce child pornography. I also believe that RICHARDSON controlled and had access to the **TARGET ACCOUNTS**.

57.     Based on the foregoing information, I respectfully submit that there is probable cause to believe that contraband, and evidence, fruits, and instrumentalities of violations 18 U.S.C. § 2251(a) (Production of Child Pornography); 18 U.S.C. §§ 2252(a)(2) & 2252A(a)(2) (Receipt or Distribution of Child Pornography); 18 U.S.C. §§ 2252(a)(4)(B) & 2252A(a)(5)(B) (Possession of Child Pornography); 18 U.S.C. § 2252A(a)(6) (Grooming); 18 U.S.C. § 2422(b) (Use of Interstate Commerce Facilities to Entice a Minor to Engage in Sexual Activity), can be found in the **TARGET ACCOUNTS**.

58.     WHEREFORE, I respectfully request that the Court issue a search warrant to search the location listed in Attachments A1, A2, and A3 of this affidavit, and to seize any information

located pursuant to the search as described in Attachments B1, B2, and B3.

KELLY M DIANTONIO   Digitally signed by KELLY M DIANTONIO
Date: 2021.03.15 19:46:20 -04'00'

Kelly M. DiAntonio
Special Agent
Homeland Security Investigations

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and Fed. R. Crim. P. 41(d)(3) this ___17th___ day of ___March___, 2021.

Honorable J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE